UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 3:09cr117 (MRK) |
| : | |
| MARTIN MCKREITH : | |

**RULING AND ORDER**

On February 15, 2011, Defendant Martin McKreith filed a Motion to Withdraw [doc. # 1302] a plea of guilty that he entered before this Court on March 23, 2010. After considering the arguments Mr. McKreith raises in support of his motion, as well as the arguments in the Government's Memorandum in Opposition [doc. # 1327] filed on March 15, 2011, the Court DENIES Mr. McKreith's Motion to Withdraw his guilty plea. The Court also DENIES AS MOOT Mr. McKreith's Motion for Extension of Time [doc. # 1291] to file a motion to withdraw his guilty plea.

**I.**

Martin McKreith is one of thirty-three defendants in a multi-defendant federal narcotics case before this Court. On December 16, 2009, Mr. McKreith was charged in a Superseding Indictment [doc. # 586] with, among other offenses, one count of conspiracy to possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846 (Count One) and one count of possession with intent to distribute 500 grams of more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Five).

On February 3, 2010, Mr. McKreith filed a Motion to Suppress [doc. # 702] two kilograms of cocaine that had been seized from a hidden compartment in an automobile driven by Mr. McKreith. Following an evidentiary hearing held over the course of three days, the Court denied the Motion to Suppress. *See United States v. McKreith*, 708 F. Supp. 2d 216 (D. Conn. 2010). Thereafter, Mr. McKreith decided to proceed to trial. The trial began on March 22, 2010. Mr. McKreith's co-Defendant Donald Parker, the only Defendant in this case to proceed to a jury verdict, was convicted on all of the counts against him.

On March 23, 2010, the second day of the trial, Mr. McKreith notified the Court that he wished to plead guilty to Count Five, the substantive cocaine possession count. On that day, the Court conducted a comprehensive Rule 11 hearing which lasted approximately thirty minutes. *See* Tr. of Proceedings of March 23, 2010 [doc. # 991]. The Court concluded that Mr. McKreith was competent to enter a guilty plea, that he understood the rights he would be giving up by pleading guilty, and that there was an adequate factual basis for his guilty plea. *See id.* at 25. The Court asked Mr. McKreith whether he had been satisfied with the legal representation he had received from his counsel, Attorney Audrey A. Felsen, and he responded that he was fully satisfied with her representation. *See id.* at 4.

The Court also asked Mr. McKreith to describe in his own words what he had done that made him guilty of Count Five. *See id.* at 21. Mr. McKreith responded under oath that he went to New York for the specific purpose of obtaining drugs for his co-Defendant Peter Maylor, and then drove an automobile from New York to Connecticut knowing that there were two kilograms of cocaine in a hidden compartment inside the automobile. *See id.* at 22. The full colloquy between the Court and Mr. McKreith follows:

> The Court: Okay. I'll let you talk to Ms. Felsen if you would like, but at this point, I want you now to explain to me in your own words what you did that you think makes you guilty of this offense, okay, sir?
>
> (Ms. Felsen conferring with the defendant)
>
> The Court: Go ahead, sir.
>
> Defendant: On April 8th, we went to New York to get some drugs and bring it back for Peter Maylor.
>
> The Court: Okay. You knew that drugs were in the car when you drove it back?
>
> Defendant: Yes, sir.
>
> The Court: Okay. Did you know it was cocaine?
>
> Defendant: Yes, sir.
>
> The Court: And did you know that it was more than 500 grams?
>
> Defendant: No, sir.
>
> The Court: Pardon? No?
>
> Defendant: No, sir. Said two keys. Two keys.
>
> The Court: Two kilos.
>
> Defendant: Yeah.
>
> The Court: So that's more than 500 grams.

*Id.* at 21-22.

Thereafter, the Court asked the Assistant United States Attorney to summarize the evidence that the Government planned to put on against Mr. McKreith if he were to proceed to trial. *See id.* at 22. The Assistant United States Attorney repeated essentially the same facts – that Mr. McKreith and others drove a van that they knew contained two kilograms of cocaine from New York to Connecticut, and intended to turn the van and the cocaine over to Mr. Maylor for distribution. *See id.* at 23. The Assistant United States Attorney indicated that the Government

3

would put on evidence that the van had been stopped by police, that two kilograms of cocaine were seized from the car, and that Drug Enforcement Administration lab tests had verified that the substance seized was indeed cocaine. *See id.* The Court asked Mr. McKreith whether he heard what the Assistant United States Attorney said and whether he disagreed with anything the prosecutor said that Mr. McKreith did. *See id.* Mr. McKreith responded that he did not disagree with anything the prosecutor had said. *See id.*

Finally, before finding Mr. McKreith guilty, the Court asked Mr. McKreith whether he was pleading guilty because he was in fact guilty and whether he was pleading guilty freely and voluntarily. *See id.* at 24. Mr. McKreith responded: "Yes, sir." *Id.*

## II.

The Court has set forth the standard for withdrawing a guilty plea in detail on several previous occasions. *See United States v. Minter*, No. 3:09cr117 (MRK), slip op. at 4-5 (Apr. 18, 2011); *United States v. Danzi*, No. 3:07cr305 (MRK), 2010 WL 3463272, at *1 (D. Conn. Aug. 2, 2010); *United States v. Piris*, 599 F. Supp. 2d 205, 210 (D. Conn. 2009). Rule 11(d)(2)(B) of the *Federal Rules of Criminal Procedure* permits a defendant to withdraw his plea anytime before sentencing if he "can show a fair and just reason for requesting the withdrawal." *Id*. The Second Circuit has explained that while "this standard implies that motions to withdraw prior to sentence should be liberally granted, a defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (citation and quotation marks omitted); *see United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008). A defendant is not automatically entitled to withdraw his plea of guilty "because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial

4

procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *Doe*, 537 F.3d at 211 (quotation marks omitted); *see United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997).

In considering whether a particular defendant has shown a "fair and just reason" for withdrawing his guilty plea, this Court must consider, among other factors: "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Doe*, 537 F.3d at 210; *see United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002).

Where a defendant asserts involuntariness as a basis for withdrawing his or her guilty plea, the "defendant must raise a significant question about the voluntariness of the original plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.*; *see Doe*, 537 F.3d at 211. "To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, [this Court must] use the familiar framework established in *Strickland v. Washington*, 466 U.S. 668 (1984)." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *see United States v. Gunn*, No. 10-1170-cr, 2011 WL 1448138, at *3 (2d Cir. Apr. 15, 2011) (summary order). Under *Strickland*, "[a] defendant must first establish that counsel's representation fell below an objective standard of reasonableness. Second, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citations and quotation marks omitted); *see Doe*, 537 F.3d at 213-14; *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

**III.**

Mr. McKreith argues that the Court should permit him to withdraw his plea because his plea was involuntary and unknowing as a result of the ineffective assistance he received from his counsel, Attorney Felsen. Mr. McKreith also claims that he is legally innocent of the offense to which he pleaded guilty. Despite those two arguments, the Court concludes that Mr. McKreith has not demonstrated any fair and just reason that would permit him to withdraw his guilty plea. The Court's conclusion is based on several factors.

*First*, while Mr. McKreith claims that his plea was involuntary due to ineffective assistance of counsel, his ineffective assistance of counsel claim fails both prongs of the *Strickland* test.

With regard to the first prong of the *Strickland* test, Mr. McKreith has not identified any actions that Attorney Felsen took while defending him that fell below an objective standard of reasonableness. Mr. McKreith asserts that Ms. Felsen "failed to inform him of his right to testify at all stages of his proceedings." Mot. to Withdraw [doc. # 1302] at 5. But Mr. McKreith does not claim that he asked Ms. Felsen whether he could testify at the suppression hearing or the trial, nor that Ms. Felsen told him he could not testify at the suppression hearing or the trail. Tellingly, Mr. McKreith does not cite a single case standing for the proposition that it is objectively unreasonable for an attorney not to expressly inform her client of his right to testify at all stages of the proceedings against him. The Court knows of no such case. While is conceivable that an attorney may have a duty to inform her client that the Fifth Amendment protects his right *not to* testify, but there is no good reason this Court knows of to require every attorney to explicitly disclose to her client that he has a right *to* testify as well.

Moreover, Mr. McKreith sat through a three-day suppression hearing and almost two days of trial. Throughout those proceedings, Mr. McKreith showed himself to be attentive to the details of his case, and willing to ask for clarification when he had questions about legal matters. Mr. Felsen does not claim that he ever expressed his desire to testify to Attorney Felsen during those proceedings, and he certainly never indicated to the Court that he wished to testify. In addition, during the plea colloquy, the Court specifically told Mr. McKreith that he had a right to testify in his own defense at trial if he wished to do so and Mr. McKreith indicated to the Court that he understood that right. *See* Tr. of Proceedings of March 23, 2010 [doc. # 991] at 10-11. Mr. McKreith appeared to be attentive, articulate, and cognizant of his rights at the plea hearing.

In sum, even assuming that Attorney Felsen in fact failed to inform Mr. McKreith that he had a right to testify at every stage of his proceedings, there is no reason to believe that her failure was objectively unreasonable. Attorney Felsen may well have believed that Mr. McKreith's testimony at the suppression hearing would be unhelpful, or might even harm his chances of prevailing. If so, her decision not to encourage Mr. McKreith to testify was well within the range of acceptable professional judgments, rather than the result of professional incompetence. *See Clark v. Duncan*, 309 F. App'x 528, 530 (2d Cir. 2009) (summary order) (rejecting ineffective assistance of counsel claim where "[nothing] in the record indicate[d] that professional incompetence, rather than professional judgment, caused defense counsel to recommend that the suppression motions be withdrawn and a plea of guilty entered"); *Minter*, No. 3:09cr117 (MRK) , slip op. at 6-7; *United States v. Gladney*, No. 3:09cr117 (MRK), 2011 WL 381561, at *5 (D. Conn. Feb. 2, 2011) (concluding that counsel's advice to defendant to accept a plea rather than pursue a motion to suppress was an acceptable strategic choice). There

is no basis for believing that any other aspect of Attorney Felsen's representation of Mr. McKreith was objectively unreasonable.

With regard to the second prong of the *Strickland* standard, Mr. McKreith's argument also fails. Even assuming that Attorney Felsen's failure to inform Mr. McKreith of his right to testify at all stages of the proceeding against him was objectively unreasonable, Mr. McKreith cannot show that but for that alleged failing, he would have refused to plead guilty and would instead gone through with the trial.[1] As the Court has already mentioned, Mr. McKreith entered his guilty plea only after *the Court* informed him of his right to testify at trial. *See* Tr. of Proceedings of March 23, 2010 [doc. # 991] at 10-11. Mr. McKreith thus decided to admit his guilt in spite of the fact that he was aware of that particular right. The Court therefore cannot conclude that Mr. McKreith's plea was unknowing or involuntary due to ineffective assistance of counsel from Attorney Felsen. Attorney Felsen's performance was in fact more than adequate.

*Second*, Mr. McKreith's own statements during the plea colloquy all point toward a conclusion that his plea was fully knowing and completely voluntary. As the Supreme Court has noted, statements made at plea allocutions "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir.1999) (reiterating that statements at plea allocution "'carry a strong presumption of verity' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict

---

[1] The Court also fails to understand how Mr. McKreith's ignorance of his right to testify at the suppression hearing could possibly have prejudiced him. Two police officers testified at the hearing that they stopped the van after Mr. McKreith ran a red light, and the Court found that testimony to be credible. *See McKreith*, 708 F. Supp. 2d at 219. If Mr. McKreith had taken the stand and asserted that he never ran a red light, the Court would likely not have reached any different conclusion. No testimony that Mr. McKreith could have offered would have altered the Court's conclusion that the police had probable cause to search the van in light of the circumstances – including that the police already knew of Mr. McKreith's association with Mr. Maylor and of their plan to participate in a drug deal – and that there was no need for the police to obtain a warrant before searching the van. *See id.* at 222-25.

them"). The Court spoke with Mr. McKreith for nearly thirty minutes at the plea colloquy. The Court asked him whether he had freely and voluntarily chosen to plead guilty, and he responded: "Yes, sir." *See* Tr. of Proceedings of March 23, 2010 [doc. # 991] at 24. His response to that question appeared to be rational and intelligent, as did his responses to all of the Court's questions during the plea colloquy.

*Third*, although Mr. McKreith proclaimed his innocence at various times throughout this case, he did not file his Motion to Withdraw his plea until February 15, 2011, nearly a year after the Court took his plea. "Whereas a swift change of heart may indicate a plea made in haste or confusion," the fact that Mr. McKreith waited almost a year before filing his Motion to Withdraw Guilty Plea "strongly supports the [Court's] finding that his plea was entered voluntarily." *Doe*, 537 F.3d at 213 (quotation marks and citations omitted) (explaining that the defendant's five month delay in filing his motion to withdraw his plea strongly supported a finding that the plea was entered voluntarily).

*Fourth*, although Mr. McKreith asserts that his motion to withdraw his plea is based in part on a claim of "legal innocence," which is one of the factors the Court must consider, Mr. McKreith's claim of legal innocence is a "bald statement" that contradicts his statements under oath during the plea colloquy. *Torres*, 129 F.3d at 715. "A reference to corroborating facts – as opposed to a 'bald statement' of innocence – is essential if a court is to credit a defendant's present claims of innocence . . . over his prior (and now contradicted) admissions of guilt *under oath*." *United States v. Gonzalez*, No. S2 06cr726 (WHP), 2010 U.S. Dist. LEXIS 37805, at *15 (S.D.N.Y. Apr. 8, 2010) (citing *Torres*, 129 F.3d at 715) (emphasis in original). Weighing against Mr. McKreith's claim of innocence are his statements under oath, in which he admitted his guilt and the factual basis for his charged offense, including that he drove a van from New

York to Connecticut with knowledge that it contained two kilograms of cocaine. Given Mr. McKreith's admissions during his plea allocution, and the lapse of nearly a year between his plea and his Motion to Withdraw his guilty plea, Mr. McKreith's belated and utterly conclusory assertion of legal innocence cannot provide a fair and just reason for the Court to grant his motion to withdraw his guilty plea. *See, e.g.*, *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (concluding that the defendant's claims of innocence in his motion to withdraw plea were unavailing given that the claims were "wholly conclusory" and that the defendant failed to explain how the facts alleged in his affidavit in support of his motion would demonstrate his innocence); *Gonzalez*, 970 F.2d at 1100 (stating that the defendant's "assertion of his innocence [was] undercut by its timing, coming nearly seven months after the plea"); *United States v. Moses*, 1:05-CR-133, 2010 WL 3521724, at *20 (D. Vt. Sept. 7, 2010) (finding that where the defendant "admitted both his guilt and the factual basis for the offenses" during his plea allocution, his belated assertion of legal innocence was not credible).

*Fifth*, the Court believes that the Government would be prejudiced if it allowed Mr. McKreith to withdraw his guilty plea at this point. The Government has already tried this case to a verdict, and Mr. McKreith even participated in the trial for nearly two days before deciding to change his plea. More fundamentally, the Government and society have a strong interest in the finality of guilty pleas, and that interest would be disserved by allowing Mr. McKreith to withdraw his guilty plea under the circumstances of this case. *See Maher*, 108 F.3d at 1529. The governmental and societal interest in finality may be properly trumped only when a defendant provides the Court with some fair and just reason for permitting withdrawal of a guilty plea. Mr. McKreith has provided no such reason. *See United States v. Fernandez-Antonia*, 278 F.3d 150,

156 (2d Cir. 2002) (stating that if defendant's arguments are without merit, "there could have been no 'fair and just reason' for [him] to withdraw his guilty plea").

In sum, Mr. McKreith may have had a change of heart regarding his decision to plead guilty, but "[t]he fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Gonzalez*, 970 F.2d at 1100; *see United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004). Although in some cases it is appropriate to hold an evidentiary hearing to evaluate the merits of a motion to withdraw a guilty plea, "[a] defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing." *Doe*, 537 F.3d at 213 (citation and quotation marks omitted). In this case, even taking as true the factual allegations made by Mr. McKreith in his brief in support of his motion, the Court confidently concludes that Mr. McKreith's plea was voluntary and valid. Thus, no evidentiary hearing on Mr. McKreith's motion to withdraw his guilty plea is necessary.

## IV.

For reasons set forth above, the Court DENIES Mr. McKreith's Motion to Withdraw [doc. # 1302] his guilty plea. The Court also DENIES AS MOOT Mr. McKreith's Motion for Extension of Time [doc. # 1291] to file a motion to withdraw his guilty plea.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 21, 2011.**